USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 7/31/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
BNP PARIBAS,                                          :
                                                      :
                            Plaintiff,                :
                                                      :         19-CV-9616 (ALC)
            -against-                                 :
                                                      :         **OPINION & ORDER**
KURT ORBAN PARTNERS LLC and MATT                      :
ORBAN,                                                :
                                                      :
                            Defendants.               :
------------------------------------------------------------------------ x

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff BNP Paribas ("BNPP") brings this action against Defendants Kurt Orban Partners LLC ("KOP") and Matthew Orban ("Orban") alleging breach of contract for failure to pay over $5,000,000 in connection with the purchase of steel alloy bars. Defendants filed a motion to dismiss. For the reasons set forth below, Defendants' motion is **DENIED**.

## BACKGROUND

On July 9, 2018, KOP sent non-party Traxys North America LLC ("Traxys") a purchase order for steel alloy bars ("Purchase Order"). *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Opp") (ECF No. 23) at 5. The Purchase Order incorporated by reference KOP's terms and conditions ("Terms & Conditions") which were available on KOP's website. *Id.* Traxys did not sign either the Purchase Order or the Terms & Conditions. *Id.* On July 13, 2018, KOP and Traxys executed a contract ("Steel Contract") in which KOP agreed to buy 2,619.423 metric tons of steel at a price of $1,730.04/metric ton. *See* Complaint (ECF No. 1) at ¶23. The Steel Contract included a forum selection and consent-to-jurisdiction clause which stated: "Buyer agrees that any suit relating to or arising out of this contract may be brought in the courts of the state of New York or any federal court siting therein. Buyer hereby consents to the

1

jurisdiction of such courts." Steel Contract (ECF No. 1-2) at 5. On July 18, 2018, pursuant to the Steel Contract, Traxys transferred title of the Steel to KOP and invoiced KOP for the Steel ("Steel Invoice"). *Id.* at ¶¶ 27–28. The Steel Invoice specified a payment due date of no later than November 15, 2018, and the Steel Contract included a penalty of 1% per month for late payment. *Id.* at ¶¶ 25, 29. The total amount owed was $4,531,713.03. *Id.* at ¶30.

On May 23, 2017, Orban executed a Guarantee pursuant to which he guaranteed "as primary and separate obligor, to [Traxys], the due and punctual payment of any and all amounts payable by [KOP] to [Traxys] under the terms of any agreement, contract or purchase order for the purchase and sale of finished steel or related products entered into between [Traxys] and [KOP] from and after the date hereof." *See* ECF No. 1-4, Exhibit D ("Orban Guarantee") at 2.

On March 23, 2017, BNPP and Traxys executed an Amended and Restated Master Accounts Receivable Purchase Agreement ("MARPA") which provides terms for Traxys to sell accounts receivable to BNPP. *See* Complaint at ¶¶34–36. Pursuant to the MARPA, BNPP purchased the KOP Steel Receivable on July 20, 2018, which included (1) KOP's monetary obligation arising out of the Steel Contract and (2) all assets related to the KOP Steel Receivable, including "all related rights and remedies under or in connection with the [Steel] Contract." *Id.* at ¶36–37. On October 2, 2019, BNPP sent a letter to KOP and Orban demanding payment pursuant to the Steel Contract by October 10, 2019. *Id.* at ¶39. Including the late penalty of 1% per month, the total payment requested was for $5,028,690.56. *Id.* at ¶40.

Plaintiff brought this action on October 17, 2019. ECF No. 1. The Court granted Defendants leave to file a motion to dismiss on December 23, 2019. ECF No. 16. Defendants filed their motion on February 14, 2020. ECF Nos. 20–22. Plaintiff filed an opposition on March 13, 2020. ECF No. 23. Defendant filed a reply on April 3, 2020. ECF No. 24.

2

## STANDARD OF REVIEW

On a motion to dismiss for lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2), "a plaintiff must make a prima facie showing that jurisdiction exists." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010) (quotation marks omitted). "A prima facie case [of personal jurisdiction] requires nonconclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 Fed.Appx. 16, 19 (2d Cir. 2015) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998)). "In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway" and "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). "[T]he pleadings and affidavits [are to be construed] in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester*, 722 F.3d at 85.

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–16 (1964)). "Forum selection clauses are prima facie valid and are enforced because they provide certainty and predictability in the resolution of disputes." *Bank of New York Mellon Tr. Co, N.A. v. Gebert*, No. 13-CV-6988, 2014 WL 1883551, at *3 (S.D.N.Y. May 9, 2014) (citation and quotation marks omitted). "When a forum selection clause is found valid and enforceable, 'it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process.'" *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co., LLC*, No. 11-CV-6804, 2012 WL 527209, at *2

(S.D.N.Y. Feb. 17, 2012) (quoting *Export-Import Bank of the U.S. v. Hi-Films S.A. de C. V.*, No. 09-CV-3573, 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010)).

## DISCUSSION

Plaintiff brings one claim for breach of contract against each Defendant. Defendants move to dismiss Plaintiff's Complaint for lack of personal jurisdiction over KOP and Orban, and for lack of standing to assert claims against Orban.

I. **Personal Jurisdiction Over KOP**

The Parties dispute whether the governing forum selection clause is from the Steel Contract or from the Purchase Order and Terms & Conditions. The Steel Contract provides that: "Buyer agrees that any suit relating to or arising out of this contract may be brought in the courts of the State of New York or any federal court sitting therein. Buyer hereby consents to the jurisdiction of such courts." Steel Contract at 5. On the other hand, "[t]he [Purchase Order] and [Terms & Conditions] specifically provide that any disputes arising out of the PO are subject to the exclusive jurisdiction of the courts of California or Texas." Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Memo") (ECF No. 22) at 2.

Defendants assert that the Steel Contract was not the agreement between the KOP and Traxys, but was instead only a Confirmation of Sale. *See* Def. Memo at 4 ("But the Confirmation of Sale—and the attached boilerplate terms and conditions—are not part of the contract."). In Defendants' view, the Purchase Order set forth the terms of the agreement, and any additional terms Plaintiff added in the Confirmation of Sale are governed by the Uniform Commercial Code §2-207, which outlines when "additional terms" become part of a contract. Applying §2-207, Defendants argue that the forum selection clause in the Steel Contract should be excluded from the agreement between the Parties.

The forum selection and consent-to-jurisdiction clause in the Steel Contract governs since the Contract was a final, signed agreement between the Parties and constituted both the offer and acceptance. The Steel Contract states that "[t]he attached Conditions of Sale form an integral part of this contract," ECF No. 1-2 at 2, and the "Conditions of Sale," in turn, provide that "this contact supersedes all correspondence, orders or confirmations of buyer or any agent thereof with respect to the material covered by this contract," *id.* at 4. The Purchase Order (and Terms & Conditions incorporated therein), on the other hand, was sent unilaterally from KOP to Traxys on July 9, 2018—four days before both Parties executed the Steel Contract. Although the Purchase Order contained a signature line, Traxys did not sign or otherwise express agreement to the terms. *See* Pl. Opp at 5. The Steel Contract included all of the material terms of the agreement—e.g., the quantity, shipment date, price, delivery, and payment terms. Since the Purchase Order was sent unilaterally from KOP to Traxys and was not executed, the Steel Contract was both an offer and acceptance between the Parties. *Cf Stemcor USA, Inc. v. Trident Steel Corp.*, 471 F. Supp. 2d 362, 366 (S.D.N.Y. 2006) ("Under paragraph (1) of section 2-207, a seller's form response to a buyer's purchase order normally constitutes a 'definite and seasonable expression of acceptance' if it repeats the terms of the buyer's order."). For that reason, the battle of the forms analysis under §2-207—which applies "when the terms of the parties' writings are not identical"—is not triggered here. *Id.* at 366.

KOP also did not object to the terms of the Steel Contract. *See Copape Produtos de Petroleo Ltda. v. Glencore Ltd.*, No. 11-CV-5744, 2012 WL 398596, at *6 (S.D.N.Y. Feb. 8, 2012) ("Taken together, Copape's failure to object followed by its explicit acceptance of the contract's terms show that it neither 'expressly limit[ed]' its acceptance of the contract to the April 12 terms nor 'notif[ied]' Glencore of any objection to Section 11, the GTC, or the arbitration provision.").

KOP stamped "Details as per KOP orders sheets in case of dispute, KOP order sheets to Govern" next to its signature on the Steel Contract. Steel Contract at 3. However, KOP applied this stamp *after* Traxys already signed the Contract. *See* Pl. Opp at 8 ("KOP applied the stamp after the Steel Contract had already been signed by Traxys and returned to Traxys a countersigned Steel Contract without registering any reservations or objections to the terms and conditions of the Steel Contract."). This stamp does not carry legal significance since parties cannot unilaterally add terms to a contract after the other party has already signed the agreement. *See Mount Vernon City Sch. Dist. v. Nova Cas. Co.*, 19 N.Y.3d 28, 35 (2012) ("Under general contract rules, an obligation may not be altered without the consent of the party who assumed the obligation.") (citing *Bier Pension Plan Trust v. Estate of Schneierson*, 74 N.Y.2d 312, 315 (1989)). Moreover, KOP did not provide an "express written objection" to any of the terms of the Steel Contract—including the forum selection and consent-to-jurisdiction clause—as required by the Steel Contract. *See* Steel Contract at 4 ("[The Steel Contract] shall become binding on buyer and seller . . . except to the extent seller receives from buyer an express written objection to any of these general terms and conditions" within "five days after buyer's receipt of this manually signed contract."). Accordingly, even if the Stamp had legal significance to the Parties' agreement, it did not sufficiently object to the forum selection and consent-to-jurisdiction clause.

For these reasons, the forum selection and consent-to-jurisdiction clause in the Steel Contract governs and the Court can exercise personal jurisdiction over KOP.

II. **Personal Jurisdiction Over Orban**

Plaintiff's basis for personal jurisdiction over Orban is the forum selection clause in the Orban Guarantee, which provides that "[t]he federal and state courts of New York County shall have jurisdiction in respect of all disputes arising out of or in connection with this Guarantee."

Orban Guarantee (ECF No. 1-4) at 2. Defendants argue that this clause does not govern because it is permissive and does not contain a consent-to-jurisdiction provision; and that instead the forum selection clause in the Purchase Order and Terms & Conditions should govern.

The forum selection clause in the Orban Gurantee governs in this case and permits the Court to exercise jurisdiction over Orban. "[F]orum selection clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 76 (2d Cir. 2009) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)). Defendants do not contend that the forum selection clause in the Orban Guarantee is either unreasonable or invalid. Instead, Defendants only argue that the clause does not contain a consent-to-jurisdiction provision. However, the Parties agreed in the Orban Guarantee that "[t]he federal and state courts of New York shall have jurisdiction." This agreement sufficiently indicates KOP's consent to jurisdiction in New York. Without arguments for why the forum selection clause in the Parties' agreement is unreasonable or invalid, the Court applies the clause and concludes that KOP consented to jurisdiction in New York and that accordingly, the Court has jurisdiction over Orban.

III. **Standing**

Plaintiff's claim against Orban is based on the Orban Guarantee entered into by Orban and Traxys. Defendants assert that Plaintiff lacks standing to bring a claim against Orban because the Orban Guarantee was a special guarantee[1] and accordingly that it was not assignable to BNPP. The Orban Guarantee, however, is not silent on the issue of assignment. It includes a clause that

---

[1] "A 'special' or 'specific' guarantee identifies the benefiting creditor or underlying agreement being guaranteed, whereas a 'general' guarantee is addressed to persons generally and may be enforced by anyone to whom it is presented." *See In re Lehman Brothers Holdings Inc.*, 602 B.R. 564, 576 (Bankr. S.D.N.Y. 2019) (citation omitted).

reads: "This Guarantee shall be binding upon and inure to the benefit of the Beneficiary and the Guarantor and their respective successors and permitted assigns." Orban Guarantee at 3. This clause indicates that the Guarantee is assignable. *See, e.g.*, *JP Morgan Chase Bank, N.A. v. Reifler*, 11-CV-4016, 2012 WL 12925172, at *4 (S.D.N.Y. Sept. 5, 2012) (concluding that "the Guarantee [is] assignable" based on language that the Guarantee "inure[s] to the benefit of any successor or permitted assignees."). The Orban Guarantee itself contemplated assignment, and in light of the Orban Guarantee, the MARPA, and BNPP's purchase of the Steel Receivable, BNPP acquired the right to stand in for Traxys with respect to the Orban Guarantee. *See Exp.-Imp. Bank of U.S. v. Agricola Del Mar BCS*, 536 F. Supp. 2d 345, 349 (S.D.N.Y. 2008) ("The assignee stands in the shoes of the assignor and is subject to the equities between the original parties.") (quotation marks omitted).[2]

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **DENIED**.

**SO ORDERED.**

**Dated:**     **July 31, 2020**
              **New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**

---

[2] Defendants also argue that even if the Orban Guarantee was assignable, BNPP has not sufficiently plead that it relied on the Orban Guarantee. *See FDIC v. Schumacher*, 660 F. Supp. 6, 6 (E.D.N.Y. 1984) ("It is of course, elementary that a creditor's right to enforce a contract of guaranty must be based upon knowledge of the existence of the guaranty and that the credit must be extended in reliance thereof . . . ."). This argument misplaces the subject of any reliance requirement. The question is whether Traxys relied on the Orban Guarantee when it entered into the agreement with KOP, not whether a subsequent purchaser (i.e., BNPP) of Receivables from Traxys relied on the Orban Guarantee. The rights that BNPP is enforcing are those that were established and agreed to by Traxys, and thus, the question of reliance is properly directed towards Traxys rather than towards BNPP, who only maintained Trayxs' rights. To that end, Plaintiff sufficiently alleges that Traxys "indisputably relied on the Guarantee to secure the sale of steel to KOP." Def. Opp. at 20.