UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BNP PARIBAS,

Plaintiff,

-v-

KURT ORBAN PARTNERS LLC AND MATT ORBAN,

Defendants.

CIVIL ACTION NO.: 19 Civ. 9616 (ALC) (SLC)

**ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

Before the Court is the motion of Traxys North America LLC ("Traxys") to intervene as a plaintiff in this action pursuant to Federal Rule of Civil Procedure 24(a) as a matter of right, or Rule 24(b) with permission (the "Motion"). (ECF No. 34 at 5, 8). Plaintiff BNP Paribas ("BNPP") opposes the Motion (ECF No. 37), and Defendants Kurt Orban Partners LLC ("KOP") and Matt Orban ("Orban") (KOP and Orban, together, "Defendants") take no position (ECF No. 38). For the reasons set forth below, the Motion is GRANTED.

## II. BACKGROUND

### A. Factual Background

On July 13, 2018, KOP and Traxys entered into an agreement pursuant to which Traxys would sell to KOP steel alloy bars (the "Steel Contract"). (ECF Nos. 1 ¶ 23; 34 at 5). Orban personally guaranteed KOP's payment obligation under the Steel Contract (the "Guarantee"). (ECF No. 34 at 5).

Traxys alleges that it delivered the steel alloy bars to KOP under the Steel Contract and on July 18, 2018 invoiced KOP in the sum of $4,531,713.03 (the "KOP Receivable"). (ECF No. 34

at 5).  Traxys states that KOP did not pay the July 18, 2018 invoice, and that despite proper demand, Orban failed to pay under the Guarantee.  (Id.)

Separately, Traxys and BNPP entered into an Amended and Restated Master Accounts Receivable Purchase Agreement ("MARPA") under which BNPP agreed to buy from Traxys certain accounts receivable, including the KOP Receivable owed under the Steel Contract.  (ECF No. 34 at 5).  On July 20, 2018, pursuant to the MARPA, BNPP purchased all of Traxys's right, title and interest in the KOP Receivable.  (Id.)  Under the MARPA, Traxys remained obligated to act as BNPP's servicer in collecting the KOP Receivable.  (Id.)  From July 20, 2018 until October 8, 2019, Traxys acted as servicer under the MARPA, and "diligently pursued collection of the KOP Receivable."  (Id.)

BNPP held a trade credit insurance policy on the KOP Receivable that was issued by Coface North America Insurance Company ("Coface").  (ECF No. 34 at 6).  On November 26, 2018, Traxys notified BNPP that the KOP Receivable was overdue, and in turn, BNPP notified Coface.  (Id.)  Coface initiated a claim investigation and retained the law firm Carlton Fields as outside counsel for the investigation.  (Id.)  Carlton Fields wrote to KOP demanding payment of the overdue KOP Receivable; in response, KOP counsel for the first time disputed the debt owed under the Steel Contract.  (Id.)

On May 8, 2019 Coface notified BNPP that:

cover in respect of this claim is hereby suspended until such time as BNP has established that:  (i) BNP suffered a loss due to nonpayment of a debt arising from a legally binding sales contract which is eligible for cover under the Policy, and (ii) that KOP's dispute regarding the debt is resolved in BNP's favor by arbitration or a final court decision that binding on both parties.

(ECF No. 34 at 6).  Traxys states that Coface's notice to BNPP was the first time Traxys learned of KOP's dispute concerning the KOP Receivable.  (Id.)  BNPP advised Traxys that it was working with Coface to resolve the matter, but Coface's position remained unchanged.  (Id. at 7).  During this time, BNPP did not allow Traxys to commence legal action against KOP or Orban to recover the KOP Receivable, and on October 8, 2019, BNP revoked Traxys's authority to act as servicer under the MARPA and prohibited any further discussions with KOP or Orban.  (Id.)

Traxys states that leading up to the commencement of this action, Traxys "urged BNPP to include in its complaint against KOP a claim for account stated," but BNPP declined.  (ECF No. 34 at 7).  On January 17, 2020, BNPP sought to invoke its right under the MARPA to demand that Traxys repurchase form BNPP the KOP Receivable; Traxys disputes this repurchase demand.  (Id.) When the District Court denied Defendants' motion to dismiss (ECF No. 25o), Traxys requested that BNPP amend its complaint to assert the account stated claim, which BNPP again declined. (ECF No. 34 at 7).

### B.  Procedural Background

On October 17, 2019, BNPP filed the complaint against Defendants seeking to recover the KOP Receivable under the Steel Contract (the "Complaint").  (ECF No. 1).  The Complaint alleges a single claim against KOP for breach of the Steel Contract, and a single claim against Orban for breach of the Guarantee.  (Id. at 8–9).

On July 31, 2020, the Honorable Andrew L. Carter, Jr. denied Defendants' motion to dismiss for lack of jurisdiction (ECF No. 25), and on August 14, 2020, Defendants answered the Complaint (ECF No. 29).  In their answer, Defendants deny that they owe BNPP any funds, and deny that BNPP has any right to directly enforce the terms of the Steel Contract.  (Id. ¶¶ 11, 15).

On September 22, 2020, this Court conduct an initial conference and adopted the parties' proposed case management plan. (ECF No. 31). Under the current case management schedule, fact discovery is to be completed by February 15, 2021. (Id.) Orban's request for an extension of time until April 15, 2021 to complete discovery, in which BNPP does not join, is the subject of an upcoming conference with the Court. (ECF Nos. 51, 31).

On November 9, 2020 Traxys filed the Motion seeking to intervene as a right pursuant to Federal Rule of Civil Procedure 24(a), or in the alternative, with permission pursuant to Rule 24(b). (ECF No. 34). Traxys seeks to intervene as a Plaintiff in order to prove that the KOP Receivable is valid and to protect its economic interests in the event that it becomes legally obligated under the MARPA to repurchase the KOP Receivable from BNPP. (Id. at 8). BNPP argues that the Motion should be denied because: (1) Traxys has no standing to pursue the account stated claim; (2) Traxys has misconstrued its repurchase obligation under the MARPA in arguing that it has an interest in this case; and (3) adding Traxys as a party would not advance the action. (ECF No. 37).

### III. DISCUSSION

#### A. Legal Standards

"Intervention of right under Rule 24(a)(2) is granted when an applicant: (1) files a timely motion; (2) asserts an interest relating to the property or transaction that is the subject of the action; (3) is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) has an interest not adequately represented by the other parties." Ferguson v. Ruane Cuniff & Goldfarb Inc., No. 17 Civ. 6685 (ALC), 2019 WL 1434435, at *2 (S.D.N.Y. Mar. 29, 2019) (internal citations omitted).

Permissive intervention is "wholly discretionary with the trial court." <u>U.S. Postal Serv. v. Brennan</u>, 579 F.2d 188, 191 (2d Cir. 1978). "In deciding whether to permit intervention under Rule 24(b), courts generally consider the same factors that are relevant as of right under Rule 24(a)(2)." <u>Olin Corp. v. Lamorak Ins. Co.</u>, 325 F.R.D. 85, 87 (S.D.N.Y. 2018) (internal citation omitted). "However, '[t]he principal guide in deciding whether to grant permissive intervention is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" <u>Ferguson</u>, 2019 WL 1434435, at *2 (quoting <u>Olin Corp.</u>, 325 F.R.D. at 87). Under Rule 24(b)(1)(B), "[a]n applicant may be allowed to intervene permissively if 'upon timely application . . . [its] claim or defense and the main action have a question of law or fact in common.'" <u>Rep. of Phil. v. Christie's</u>, No. 98 Civ. 3871 (RPP), 2000 WL 1056300, at *2 (S.D.N.Y. Aug. 1, 2000) (quoting <u>United States v. Pitney Bowes, Inc.</u>, 25 F.3d 73 (2d Cir. 1994)). "Other relevant factors include the nature and extent of the intervenors' interests, whether their interests are adequately represented by existing parties, and whether proposed intervenors will significantly contribute to the full development of the suit's underlying factual issues and to the just and equitable adjudication of the legal questions presented." <u>Ferguson</u>, 2019 WL 1434435, at *2. "The 'principal consideration' for permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" <u>Battle v. City of New York</u>, No. 11 Civ. 3599, 2012 WL 112242, at *6 (S.D.N.Y. Jan. 12, 2012) (quoting <u>U.S. Postal Serv.</u>, 579 F.2d at 191). "Additional parties always take additional time which may result in delay, but this does not mean that intervention should be denied. The rule requires the court to consider whether intervention will unduly delay the adjudication." <u>Ass'n of Conn. Lobbyists LLC v. Garfield</u>, 241 F.R.D. 100, 102 (D. Conn. 2007) (internal citations omitted).

**B.  Application**

### 1.  Timeliness

"Timeliness is the threshold consideration for both mandatory and permissive intervention."  Ferguson, 2019 WL 1434435, at *2.  Traxys argues that granting the Motion will neither prejudice the existing parties nor delay the progress of the case.  (ECF No. 34 at 10).  Defendants do not argue that the Motion is untimely nor that they would be prejudiced by Traxys's intervention.  (See ECF No. 37).

"'The timeliness requirement is flexible'" and the decision is one entrusted to the district court's "'sound discretion.'"  Pike Co., Inc. v. Universal Concrete Prods. Inc., 284 F. Supp. 3d 376, 394 (W.D.N.Y. 2018) (citing United States v. Yonkers Bd. of Educ., 801 F.2d 593, 594–95 (2d Cir. 1986)).  In determining whether a motion to intervene is timely, courts consider "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness."  In re Bank of N.Y. Derivative Litig., 320 F.3d 291, 300 (2d Cir. 2003) (internal citations omitted).

Here, Traxys filed the Motion on November 9, 2020 (ECF No. 34), soon after the District Court denied Defendants' motion to dismiss (ECF No. 25) and after Defendants' August 14, 2020 Answer (ECF No. 29).  Although Traxys could have moved to intervene sooner, BNPP has not argued that it would suffer any prejudice by the intervention, and Traxys did not wait until a critical moment in the case to bring the Motion.  Orban has already moved for an extension of the Fact Discovery deadline (ECF No. 51) and it is undisputed that Traxys will be involved in the case:  BNPP has served a subpoena on Traxys for documents, and Traxys will be required to

produce evidence and witnesses in this matter.  (ECF No. 37 at 3).  Because granting the Motion would not delay the case or prejudice the existing parties, the Court deems it timely.  See First Mercury Ins. Co. v. Shawmut Woodworking & Supply, Inc., No. 12 Civ. 1096 (JBA), 2014 WL 12573387, at *4 (D. Conn. June 17, 2014) (quoting Hartford Fire Ins. Co. v. Mitlof, 193 F.R.D. 154, 160 (S.D.N.Y. 2000)) ("'It is firmly established that the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties.'").

### 2.  Common questions of law or fact

For permissive intervention, Traxys must also demonstrate that it "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "However, '[t]he words claim or defense [in permissive intervention] are not to be read in a technical sense, but only require some interest on the part of the applicant.'"  Louis Berger Grp., Inc. v. State Bank of India, 802 F. Supp. 2d 482, 488 (S.D.N.Y. 2011) (quoting Dow Jones & Co. v. U.S. Dep't of Justice, 161 F.R.D. 247, 254 (S.D.N.Y. 1995)).

BNPP focuses its opposition on its contention that because Traxys could not pursue its claim for account stated against the Defendants in an independent action, it should not be permitted to intervene in this one.  (ECF No. 37 at 1–2).  BNPP states that it "currently owns (and is exercising) the exclusive right to pursue KOP and Orban in connection with the Steel Receivable," and that "Traxys should not be permitted to intervene in this case where it would be unable to assert claims against the Defendants, including the 'account stated' claim referenced in" the Motion.  (Id.)  In addition, BNPP posits that Traxys's obligation under the

MARPA remains consistent regardless of the outcome of this case, and thus Traxys has "no concrete interest in the outcome of this case." (Id. at 2).

Even if Traxys's interest were deemed too removed for intervention as a right, see New York v. Scalia, No. 20 Civ. 1689 (GHW), 2020 WL 3498755, at *2 (S.D.N.Y. June 29, 2020) ("[A]n interest that is . . . contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule."), it is undisputed that Traxys has "some interest" in the outcome of this action. That is, if BNPP succeeds in collecting the KOP Receivable in this action, Traxys would only remain liable "to BNPP for interest and for costs incurred during BNPP's pursuit of recovery." (ECF No. 37 at 2–3). If BNPP fails to collect the KOP Receivable, it may demand that Traxys repurchase the KOP Receivable and pay interests, costs and attorneys' fees, which, in fact, it already has. (Id. at 2). See Louis Berger Grp., Inc., 802 F. Supp. 2d at 488 (holding that permissive intervention only requires "some interest on the part of the applicant").

Traxys seeks to assert a claim defending its actions in connection with the Steel Contract at issue in this case, which raises common questions of law and fact because "both [proposed plaintiff-intervenor's] and Plaintiff's claims involve the interpretation of the rights and obligations of the parties within same contract." Pike Co., Inc., 284 F. Supp. 3d at 394 (citing Kirby v. Coastal Sales Assocs., Inc., 199 F.R.D. 111, 119 (S.D.N.Y. 2001)) ("There are common questions of law and fact in this case, as both [the plaintiff]'s and [the intervenor]'s claims are for breach of the same contracts."). Therefore, the Court finds that Traxys maintains a claim "that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

**3.  Absence of undue delay or prejudice and inadequacy of representation**

As stated above, BNPP does not argue that granting the Motion will result in undue delay or prejudice to the existing parties, rather, they state that "it is unclear what value Traxys would add by intervening in this case if it has no standing to assert any claim, including an 'account stated' claim." (ECF No. 37 at 3).  BNPP also does not argue that its representation of Traxys's interest in "adequate," although the Court notes that Traxys and BNPP share the same ultimate objective – collecting the KOP Receivable from Defendants.  (Id.)  Traxys contends that BNPP does not adequately represent its interests because it has refused to include a claim for account stated, despite Traxys's insistence that there is a basis for that claim.  (ECF No. 34 at 13).

The Court also notes that Traxys is already involved in this litigation; BNPP has served a subpoena on Traxys for documents, and Traxys will be required to produce evidence and witnesses in this matter.  (See ECF No. 37 at 3).  Given that Traxys was an original party to the Steel Contract, payment for which is at issue in this case, the Court finds that its intervention would "significantly contribute to full development of the underlying factual issues and to the just and equitable adjudication of the legal questions presented."  Ass'n of Conn. Lobbyists LLC, 241 F.R.D. at 103; see Int'l Design Concepts, LLC v. Saks Inc., 486 F. Supp. 2d 229, 235 (S.D.N.Y. 2007) (same).  Because Traxys's proposed intervenor claim and BNPP's claims arise from a single set of operative facts, Traxys's participation in this suit will "help to provide the Court with a full picture of the issues to be decided and will permit the issues to be fully and thoroughly evaluated in an efficient, just, and speedy manner."  Schaghticoke Tribal Nation v. Norton, No.  06 Civ. 81 (PCD), 2006 WL 1752384, at *9 (D. Conn. June 14, 2006).

Accordingly, the Court finds the lack of prejudice to the existing parties, and the fact that the addition of Traxys would help develop the factual record weigh in favor of granting the Motion.  Pike Co., Inc., 284 F. Supp. 3d at 394 (granting motion to intervene where "[n]otably absent from Defendant's submissions is any argument that the intervention requested would unduly delay or prejudice the adjudication of the rights of the original parties" (internal citations omitted)).

### IV. <u>CONCLUSION</u>

The Court finds that Traxys has sufficiently stated a case for permissive intervention under Rule 24(b).  As noted above, the standard for permissive intervention is more liberal than that for intervention as of right, and requires at a minimum that the proposed intervenor has "a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Here, Traxys has shown that the question of its performance under the Steel Contract is germane to the main litigation.  Permitting Traxys to intervene would not prejudice the rights of any other parties to the litigation nor unduly delay the resolution of this case. Discovery remains ongoing and the inclusion of Traxys in that process ensures that it has access to documents and testimony to defend itself from any potential liability arising from a finding for Defendants.  See N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc., No. 12 Civ. 1633 (JMA) (AKT), 2015 WL 777248, at *24 (E.D.N.Y. Feb. 13, 2015), adopted by, 2015 WL 1345814 (E.D.N.Y. Mar. 25, 2015).  Therefore, the Motion is GRANTED.

At the status conference scheduled for February 3, 2021 at 10:00 am, the Court will discuss the motion for an extension of time to complete discovery.  (ECF No. 51).  If this Order

does not provide Traxys with enough time to meaningfully participate in the conference as scheduled, the parties may seek adjournment to a later date.

Dated:       New York, New York
             February 2, 2021

_____
**SARAH L. CAVE**
United States Magistrate Judge