UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BNP PARIBAS,

                    Plaintiff,

        -v-

                                                    CIVIL ACTION NO.: 19 Civ. 9616 (ALC) (SLC)

KURT ORBAN PARTNERS LLC, a California Limited          **REPORT AND RECOMMENDATION**
Liability Company, and MATT ORBAN, an individual,

                    Defendants.

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE ANDREW L. CARTER**, United States District Judge:

## I.INTRODUCTION

Plaintiff BNP Paribas ("BNP") brought this breach of contract action after Defendants Kurt Orban Partners LLC ("KOP") and Matt Orban ("Orban") failed to pay for steel alloy bars (the "Steel") pursuant to a 2018 contract. (ECF No. 1). Following KOP's failure to defend itself in this action, BNP moved for entry of default judgment against KOP. (ECF No. 50 (the "Motion")).

For the reasons set forth below, I respectfully recommend that the Motion be GRANTED and judgment be entered in favor of BNP and against KOP in the amount of (i) $4,531,713.03 for the unpaid price of the Steel; (ii) a 1% per month late penalty from November 15, 2018 to the date of judgment; and (iii) pre-judgment interest from November 15, 2018 to the date of judgment.

## II.BACKGROUND

### A. Factual Background

On March 23, 2017, BNP and Traxys North America LLC ("Traxys") entered into an agreement (the "MARPA"),[1] pursuant to which BNP purchased certain of Traxys's accounts receivable. (ECF No. 1 ¶¶ 4, 34–38). Pursuant to a contract dated July 13, 2018, KOP agreed to buy the Steel from Traxys (the "Steel Contract"). (Id. ¶ 5; ECF No. 1-2). The Steel Contract set the price for the Steel (which totaled 2,619.423 metric tons) at $1,703.04 per metric ton, and provided for a late-payment penalty of 1% per month (the "Penalty"). (ECF Nos. 1 ¶ 5; 1-2 at 2)). The Steel Contract, and all related rights and remedies, is one of the accounts receivable that BNP acquired from Traxys pursuant to the MARPA. (ECF No. 1 ¶¶ 4, 8). Orban personally guaranteed any payment due to Traxys under the terms of any steel contract between Traxys and KOP, up to a maximum of $2,500,000 (the "Guarantee"). (Id. ¶ 9; ECF No. 1-4).

On July 18, 2018, KOP received an invoice for the Steel in the amount of $4,531,713.03, stating that payment was due by November 15, 2018 and instructing KOP to remit payment to Traxys's account at BNP (the "Invoice"). (ECF Nos. 1 ¶ 6; 1-3). KOP failed to pay for the Steel by November 15, 2018, in breach of the Steel Contract and the Invoice. (ECF No. 1 ¶¶ 7, 42). Orban has also not made any payments of any amount KOP owes under the Steel Contract, as the Guarantee required. (Id. ¶¶ 10, 45).

On October 2, 2019, standing in the shoes of Traxys to enforce the Steel Contract and the Guarantee, BNP sent KOP and Orban a letter demanding payment of the Invoice plus the Penalty of 1% per month (which BNP calculated as $496,977.53 as of October 10, 2019), for a total of

---

[1] MARPA stands for Master Accounts Receivable Purchase Agreement. (ECF No. 1-1 at 2).

$5,028,690.56 (the "Demand Letter").  (ECF No. 1 ¶¶ 11, 12, 39–41, 48).[2]  In the Demand Letter, BNP reserved the right to seek its legal fees and interest if KOP and Orban did not pay by October 10, 2019.  (Id. ¶¶ 39–41).  As of October 17, 2019, KOP and Orban had not made any payment under the Steel Contract and the Invoice.  (Id. ¶ 13).

### B. Procedural Background

On October 17, 2019, BNP filed the Complaint asserting breach of contract claims against KOP, for breach of the Steel Contract and the Invoice, and Orban, for breach of the Guarantee.  (ECF No. 1 ¶¶ 49–63).  BNP sought damages from KOP in the amount of at least $5,028,690.56, and from Orban in the amount of $2,500,000.  (Id. at 10).  BNP effected service of the Summons and Complaint on KOP on October 23, 2019, and on Orban on November 1, 2019.  (ECF Nos. 8, 9).  On December 16, 2019, KOP and Orban appeared through counsel, Sean T. Scuderi, Esq. of Tarter Krinsky & Drogin LLP ("TKD").  (ECF No. 13).

On February 14, 2020, KOP and Orban filed a motion to dismiss for lack of personal jurisdiction (the "MTD").  (ECF No. 20).  In an Opinion and Order dated July 31, 2020, the Honorable Andrew L. Carter denied the MTD (the "MTD Order").  (ECF No. 25).  See BNP Paribas v. Kurt Orban Ptrs. LLC, No. 19 Civ. 9616 (ALC) (SLC), 2020 WL 4432302 (S.D.N.Y. July 31, 2020).  Thereafter, KOP and Orban filed an Answer to the Complaint, and the Court entered a Case Management Plan setting February 15, 2021 as the close of fact discovery, among other

---

[2] The Court notes that, although the Steel Contract provides for a late-payment Penalty of "1% per month" (ECF. No. 1-2 at 2), the penalty in the Demand Letter was calculated using "a daily rate of $1510.57." (ECF No. 1-5 at 2).  BNP provides no support for calculating the Penalty on a daily basis. As discussed infra at III.B.2, the Court recommends awarding a late-payment Penalty calculated using the monthly rate in the Steel Contract.

deadlines. (ECF Nos. 29, 31).[3] Traxys also filed a motion to intervene, which the Court granted. (ECF Nos. 33–35, 53).

On November 24, 2020, TKD moved to withdraw as counsel for KOP, citing KOP's non-payment of legal fees, the appointment of a Receiver to manage KOP's finances following KOP's default on a loan with another bank, and the Receiver's statement to TKD that he would not allocate funds to defend KOP in this action. (ECF Nos. 39; 40 ¶¶ 2–4; 40-1; 40-2; 40-3). The Court granted TKD's motion, and directed new counsel for KOP to enter an appearance by December 25, 2020, or risk entry of default against KOP. (ECF No. 43).[4] On December 9, 2020, BNP filed correspondence from the Receiver, who stated that he would "not be seeking [new] counsel to defend KOP in this matter." (ECF No. 45-1 at 2). Based on the Receiver's assertion, the Court granted BNP's request to initiate default proceedings against KOP. (ECF Nos. 45–46).

On December 15, 2020, the Clerk of the Court issued a Certificate of Default as to KOP (ECF No. 49), and on December 28, 2020, BNP filed the Motion. (ECF No. 50).

On March 23, 2021, the parties submitted a proposed stipulation and judgment against Orban in the amount of $2,500,000, which Judge Carter so-ordered and the Clerk of the Court entered on May 27, 2021 (the "Stipulated Judgment"). (ECF Nos. 55, 56, 60, 61). Judge Carter also referred the Motion to me for a Report and Recommendation. (ECF No. 59).

---

[3] On February 3, 2021, following a conference with counsel for BNP, Traxys, and Orban, the Court extended the deadlines for fact discovery. (ECF No. 54). The Court subsequently adjourned all discovery deadlines sine die. (ECF No. 58).

[4] TKD continued to appear on behalf of Orban. (ECF No. 51; minute entry 2/3/2021).

4

### III.DISCUSSION

**A. Legal Standards**

A default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). A defendant's default is deemed "a concession of all well-pleaded allegations of liability," but it is not deemed an admission of damages. Rovio Ent., Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015). Although the default equates to a concession of the truth of the allegations as to liability, a court must still examine the pleadings to determine whether a plaintiff's allegations are prima facie sufficient to demonstrate liability for the cause of action as to which they are seeking a default judgment. See Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas, 509 F. App'x 54, 56 (2d Cir. 2013) (liability of defaulting defendant depends on whether "allegations are sufficient to state a cause of action"); Lenard v. Design Studio, 889 F. Supp. 2d 518, 528 (S.D.N.Y. 2012) ("Without a response from Defendants, this Court must first determine whether the allegations in Plaintiff's Complaint are sufficiently pleaded to establish Defendants' liability."); Bleecker v. Zetian Sys., Inc., No. 12 Civ. 2151 (DLC), 2013 WL 5951162, at *4–5 (S.D.N.Y. Nov. 1, 2013) (evaluating whether plaintiff had adequately pled federal jurisdiction and elements of breach of contract claim).

Once liability has been established, the court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Am. Jewish Comm. v. Berman, No. 15 Civ. 5983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)), adopted by 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016). The plaintiff "bears the burden of establishing [its] entitlement to

recovery and thus must substantiate [its] claim with evidence to prove the extent of damages." Dunn v. Advanced Credit Recovery Inc., No. 11 Civ. 4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012).  The plaintiff must demonstrate that the compensation it seeks "relate[s] to the damages that naturally flow from the injuries pleaded."  Am. Jewish Comm., 2016 WL 3365313, at *3 (quoting Greyhound, 973 F.2d at 159).  Where the damages are "not susceptible to simple mathematical calculation, Federal Rule of Civil Procedure 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence."  Id. at *4 (internal citation omitted).  If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the court need not conduct an evidentiary hearing.  Fustok v. ContiCommodity Servs. Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997) (court may determine appropriate damages based on affidavits and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment") (internal citation omitted).

**B.  Application**

**1.  KOP's liability**

To state a claim for breach of contract under New York law, a plaintiff must allege four elements: "(1) the existence of a contract; (2) the performance of that contract by one party; (3) the breach of that contract by the other party; and (4) damages."  LG Cap. Funding, LLC v. Energy Edge Techs. Corp., No. 17 Civ. 9021 (AKH), 2018 WL 4278344, at *1 (S.D.N.Y. Aug. 28, 2018); Lenard, 889 F. Supp. 2d at 528.

The Court finds that BNP has adequately alleged each of these four elements:  (1) the Steel Contract and accompanying Invoice constituted a contract between KOP and Traxys, in whose shoes BNP legally stands; (2) pursuant to the Steel Contract, Traxys delivered the Steel to KOP; (3) KOP has breached the contract by failing to pay in full for the Steel that Traxys delivered; and (4) BNP has been damaged in the amount of at least $4,531,713.03, the amount of the Invoice.  (ECF No. 1 ¶¶ 1, 7–8, 12, 31, 37–39).  See LG Cap. Funding, 2018 WL 4278344, at *1 (finding that plaintiff had adequately pled breach of contract claim).  Accordingly, the record establishes KOP's liability for breach of contract.

### 2.  Calculation of damages

The remaining question is whether BNP has provided sufficient evidence to support its claim for damages.  Transatlantic Marine, 109 F.3d at 111; Bleecker, 2013 WL 5951162, at *6. The Motion is supported by the declaration of BNP's counsel and documentary evidence.  (See ECF Nos. 50-1–50-7).  The Court finds that BNP has met this burden and that a hearing is unnecessary because its submissions constitute a "sufficient basis from which to evaluate the fairness" of its damages request.  Fustok, 873 F.2d at 40; see Bos. Sci. Corp. v. N.Y. Ctr. for Specialty Surgery, No. 14 Civ. 6170 (RRM), 2015 WL 13227994, at *3 (E.D.N.Y. Aug. 31, 2015). From BNP's written submissions, the Court will next analyze the appropriate amount of compensatory damages.

"The general rule for measuring damages . . . is the amount necessary to put the plaintiff in the same economic position he would have been in had the [d]efendant fulfilled his contract." Bos. Sci., 2015 WL 13227994, at *4 (internal citation omitted).  BNP has shown that KOP owes, but has not paid, the price of the Steel, $4,531,713.03, and is therefore entitled to this amount.

(ECF Nos. 1 ¶¶ 5–6; 1-2 at 2; 1-3 at 2).  See Precise Leads, Inc. v. Nat'l Brokers of Am., Inc., No. 18 Civ. 8661 (RA) (SLC), 2020 WL 736918, at *5 (S.D.N.Y. Jan. 21, 2020), adopted as modified, 2020 WL 729764 (S.D.N.Y. Feb. 13, 2020) (awarding compensatory damages in the amount of unpaid invoices).

In addition, BNP is also entitled to the Penalty, calculated on a monthly basis, under the Steel Contract.  (ECF Nos. 1 ¶¶ 5–6; 1-2).  Cf. Eichenblatt v. Kugel, No. 17 Civ. 559 (DLI) (LB), 2018 WL 3202079, at *9 (E.D.N.Y. May 15, 2018) (awarding, in addition to unpaid principal and contractual interest, "default interest" that acted as penalty for failure to make contractual payments); Alston v. Northstar La Guardia LLC, No. 10 Civ. 3611 (LAK) (GWG), 2010 WL 3432307, at *3 (S.D.N.Y. Sept. 2, 2010) (awarding "late penalty" of interest at 1.5% per month where defendant failed to make contractual payments).  Because KOP has still not paid for the Steel, the late-payment Penalty has accrued at 1% per month, totaling $1,404,831.04 as of the date of this Report and Recommendation,[5] and will continue to accrue until the date judgment is entered.

Third, BNP seeks pre-judgment interest.  (ECF Nos. 1 at 10; 50-8 at 14).  In this diversity action, "state law governs the award of pre-judgment interest." Sung Taek Kwon v. Leg Res., Inc., No. 15 Civ. 9658 (RWL), 2018 WL 2316630, at *4 (S.D.N.Y. May 7, 2018) (citing Schipani v. McLeod, 541 F.3d 158, 164 (2d Cir. 2008)).  New York law provides for the award of pre-judgment interest

---

[5] Apart from providing that "[l]ate payment will incur a penalty of 1% per month" (ECF. No. 1-2 at 2), the Steel Contract does not specify any formula for calculating the Penalty.  Accordingly, to calculate the current Penalty amount, the Court calculated the monthly Penalty ($4,531,713.03 * 0.01 = $45,317.13), and then multiplied by the number of months that KOP's payment is past due as of the date of this Report and Recommendation (i.e., 31 months * $45,317.13 = $1,404,831.04).  Because payment was due on November 15, 2018, the Penalty first accrued on December 15, 2018 and continued to accrue monthly, i.e., on the fifteenth of every month since that time.

"at a rate of nine percent per annum, calculated from the earliest ascertainable date on which the cause of action existed." Id. (citing N.Y. C.P.L.R. §§ 5001, 5002, 5004); see Graham v. Jones, 144 F.3d 229, 239 (2d Cir. 1998) (noting that pre-judgment interest is "normally recoverable as a matter of right" in breach of contract actions under New York law) (internal citation omitted). Here, the date on which KOP should have paid for the Steel was November 15, 2018, which is a reasonable date on which to begin calculating pre-judgment interest. (ECF Nos. 1 ¶ 29; 1-3 at 2). See Conway v. Icahn & Co., 16 F.3d 504, 512 (2d Cir. 1994) (noting that, under New York law, courts have "wide discretion" to determine "a reasonable date from which to award pre-judgment interest").[6]

Accordingly, I respectfully recommend that KOP recover $4,531,713.03, plus the late-payment Penalty in the amount of 1% per month from November 15, 2018 until the date judgment is entered, and pre-judgment interest at a rate of 9% from November 15, 2018 until the date judgment is entered.[7]

---

[6] Although BNP included in the prayer for relief in the Complaint a request for post-judgment interest, it does not seek post-judgment interest in the Motion, and, accordingly, the Court does not address it here.

[7] As the Court can only calculate the late penalty through the date of this Report and Recommendation, BNP's counsel should be prepared to submit a calculation of the total late penalty that has accrued from November 15, 2018 until the date of judgment.

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend that BNP's Motion be GRANTED and judgment be entered in favor of BNP and against KOP in the following amounts: (i) $4,531,713.03 for the unpaid price of the Steel; (ii) a 1% per month late penalty from November 15, 2018 to the date of judgment; and (iii) pre-judgment interest from November 15, 2018 to the date of judgment.

BNP is directed to serve a copy of this Report and Recommendation on KOP and to file proof of service on the docket.

Dated:     New York, New York
           July 14, 2021

SARAH L. CAVE
United States Magistrate Judge

10

\*                         \*                         \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Carter.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).